## CADE v. UNITED STATES.
### No. 6757.

United States Court of Appeals, Fourth Circuit.

Argued April 6, 1954.

Decided May 10, 1954.

J. Fred Buzhardt, McCormick, S. C. (J. Fred Buzhardt, Jr., McCormick, S. C., on the brief), for appellant.

Edmund B. Clark, Atty. Dept. of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., John C. Williams, U. S. Atty., Greenville, S. C., and Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by a landowner from a judgment fixing compensation in a condemnation proceeding. The property involved is 268.6 acres of land, a portion of a tract of 580 acres belonging to Mrs. Jane K. Cade; and it was taken by the government for use in connection with the Clark's Hill Dam project. The jury fixed the value of the land condemned, together with all damages incident to the taking thereof at $23,831; and from judgment in accordance with the verdict Mrs. Cade has appealed. The principal questions presented by the appeal, and the only ones which we need consider, relate to the exclusion of the testimony of three witnesses, Henderson, Harvey and Hawes, offered by Mrs. Cade with respect to the valuation of the property.

▉▉▉ The witness Henderson was probably the most important witness offered on behalf of the landowner. He was thoroughly familiar with the tract of land in question and with land values in the neighborhood and had had long experience in appraising lands for the Federal Land Bank and the War Department Engineers. He placed a value of $35,070 on the land taken and fixed the severance damage sustained by the remainder of the tract at $5,000. He explained in detail how he arrived at these figures, stating that there were 60 acres of good bottom land which he valued at $125 per acre, 100 acres of upland which he valued at $75 per acre, and 108 acres of woodland which he valued at $40 per acre. He described in detail the buildings on the property and gave what he

considered to be the value of each, valuing all of them at $15,750. After he had been cross examined at length and had demonstrated a knowledge of the property and of values which must have impressed the jury, the trial judge on motion of the government struck out his entire testimony on the ground that the overall value to which he had testified had been arrived at by adding together the values he had placed upon the various items.

This, we think, was error.

This is not a case where there was danger of misleading the jury by giving different values to the entire land for various uses and adding these together, nor is it a case where there was attempt to arrive at value by adding together various elements of value without considering them together, as in Morton Butler Timber Co. v. United States, 6 Cir., 91 F.2d 884, or Devou v. City of Cincinnati, 6 Cir., 162 F. 633, or United States v. Certain Parcels of Land, 5 Cir., 149 F.2d 81. The witness testified to the value of the land as a whole after giving the valuation which he had placed upon the various parts. This is the way that any man of intelligence would have arrived at a valuation of the property for ordinary business purposes and we know of no reason why a witness testifying under oath as to his opinions should not arrive at a valuation in the same way. The testimony was clearly admissible, we think, under the principles laid down by this court in United States v. 25.406 Acres of Land, etc., 4 Cir., 172 F.2d 990, 993, where we said with respect to testimony given by valuation witnesses as to the availability of property for certain uses the cost of developing it for such uses and the income which could be expected from it when developed:

"Certainly such matters would be considered by any business man in selling, buying or valuing the property; and when the court adopts the standards of the market place in making valuations there is no reason why it should close its eyes to how

the market place arrives at and applies the standards. As was well said by the late Judge Henry G. Connor, one of the great judges of this Circuit, 'It is difficult to perceive why testimony, which experience has taught is generally found to be safely relied upon by men in their important business affairs outside, should be rejected inside the courthouse.' Wade v. Carolina Tel. & Tel. Co., 147 N.C. 219, 60 S.E. 987, 989."

In United States v. Wise, 4 Cir., 131 F.2d 851, this court held admissible evidence as to the reproduction cost of structural improvements on property condemned, distinguishing the case of Devou v. City of Cincinnati, supra; and in Clark v. United States, 8 Cir., 155 F.2d 157, 162, the Court of Appeals of the Eighth Circuit held it to be an abuse of discretion not to admit such evidence and prejudicial error to exclude testimony of a witness as to what part of the value to which he had testified he attributed to the wooded land as distinguished from the other land involved. In the case last cited, which is directly in point here, the court speaking through Judge Gardner, said:

"We think it was prejudicial not to permit defendants' witness to tell the jury what part of the value he placed on the timber land and what part on the rest of the land. In eminent domain proceedings the rule is that all facts which an ordinarily prudent man would take into account before forming a judgment as to the market value of property he contemplates purchasing is relevant and material. The landowner should be allowed to state and to have his witnesses testify to every fact concerning the property which he would normally or ordinarily be disposed to put forth in order to place it in an advantageous light if he were attempting to negotiate a sale of it to a private individual. He was entitled to present to the jury all the elements reasonably affecting the value of the property for all uses for which it was suitable."

And we do not think that the error was cured by the judge's ruling that the witness might be recalled, since this was upon condition that his testimony be limited in accordance with the ruling made in striking out that which had been theretofore given. The judge should have admitted the testimony and charged the jury as to how it was to be considered along the lines of the charge approved by this court in United States v. Wise, supra, 131 F.2d 851–853.

And we think it equally clear that it was erroneous to exclude the testimony of the witnesses Harvey and Hawes. These witnesses testified that there was a deposit of granite rock on the land which was reasonably worth $25,000. Both were engaged in rock quarrying, knew market conditions affecting that business and were familiar with the property involved. There was no reason why their testimony as to the value of the deposit of rock should not have been admitted for consideration by the jury in estimating the value of the land taken. It seems to have been excluded because the trial judge, as said in his opinion, thought that "In arriving at a fair market value it is not proper to show separate valuations of component parts". This was answered, we think, in United States v. 5139.5 Acres of Land, etc., 4 Cir., 200 F.2d 659, 661, wherein we held it error to exclude evidence of the sale value of timber as bearing upon the value of land upon which it was standing and said: "The principal reason given by the trial judge for excluding the evidence, viz., that the land and timber should be valued as a whole and not separately, while a sound rule of law, was no reason for excluding the evidence as to the separate value of the timber, which was a matter to be considered in valuing the two together; * * *."

Directly in point also is the decision of the Court of Appeals of the District of Columbia in National Brick Co. v. United States, 76 U.S.App.D.C. 329, 131

F.2d 30, 31, a condemnation proceeding in which the action of the trial court was reversed for refusing to admit testimony as to the value of sand on the land condemned. The court, speaking through Chief Justice Groner, used the following pertinent language:

"This opinion of the Court was, of course, wrong, for no rule is better established than that the special value of land due to its adaptability for use in a particular business is an element which the owner of land is entitled to have considered in determining the amount to be paid in just compensation. So much as this was said by the Supreme Court in Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644. And we know of no other evidence by which the jury could be properly guided in determining the value of the property than to be told the per ton value of the sand as it lay, or, without this knowledge, how the jury could ever have reached a judgment based on anything more than guess or speculation."

The trial judge was correct in thinking that the property should be valued as a whole for the purpose of assessing compensation for the taking; but this does not preclude the admission of testimony showing particular elements of value for consideration by the jury in arriving at the overall value which they are required to find as the basis of compensation. The value of a rock deposit, like the value of a coal mine or an oil well or a building may properly be shown as bearing upon the value of the property being taken, even though the measure of recovery is the overall value of the property. In no other way would it be possible adequately to apply the well settled rule that the most profitable use to which the land can reasonably be put in the reasonably near future may be shown and considered as bearing upon the market value. See McCandless v. United States, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205; and opinion of this court in United States ex rel. Tennessee Valley Authority v. Powelson, 4 Cir., 138 F.2d 343 and cases there cited.

 It is argued that no sufficient foundation was laid for the testimony of the witnesses Harvey and Hawes, but the point is without merit. Harvey testified that he had been in the rock business for forty-seven years and had worked in that business in Scotland, Georgia, North and South Carolina, Maine, Maryland, Wisconsin and on the West Coast; that he had been engaged in the business in this general area for thirty-nine years and had had experience in every phase of the business; that he was presently engaged in the business at Elberton, Georgia, about 50 miles from the property under consideration; and that he knew the value of the property for quarrying purposes. When asked whether he had made borings to determine the quantity of rock present, he stated that no boring was necessary because there was sufficient outcropping of the rock for him to estimate the amount with reasonable accuracy by observation. As to the marketability of the rock, he testified that there was a demand for it in the area and that he himself had supplied rock to the area from his quarries in Georgia, that continuous markets for such rock existed at Augusta, Macon and the Hydrogen Bomb Plant. Hawes, who had been connected with the rock business in that section for a number of years, testified that there was a big demand for this sort of rock throughout the Carolinas, that its texture was suited for use as crushed stone and that he had known this land all his life and the rock deposit here was ideally located for drilling. He testified also that he was familiar with prices, sales practices and the general operations of a granite company, and had made purchases of ground for quarrying purposes. The case is not at all like Cameron Development Co. v. United States, 5 Cir., 145 F.2d 209, upon which the government relies, wherein it was held that evidence with regard to shell marl on lands was properly excluded in the absence of any showing that there

was a market for the marl which would give it value. It is more like United States v. Rayno, 1 Cir., 136 F.2d 376, in which evidence of the value of a gravel pit on condemned land was held to have been properly admitted.

The action of the trial judge in limiting the scope of the cross examination of a witness for the government, and in virtually rebuking counsel for a question asked the witness by way of impeachment, raises a question which we need not pass upon as it will probably not arise in the retrial of the case. It is sufficient to say that witnesses for the government are subject to cross examination and impeachment like other witnesses, but that the scope of such examination, as in other cases, is a matter resting very largely in the sound discretion of the trial judge which will not be reviewed in the absence of abuse.

For the reasons stated, the judgment appealed from will be reversed and the case will be remanded for a new trial.

Reversed and remanded.