STATE HIGHWAY COMMISSION v. THOMAS MODE AND WIFE,
FANNIE MODE

No. 68SC60

(Filed 9 October 1968)

**1. Eminent Domain § 7— highway condemnation — failure to allege prior good faith negotiation**

A complaint in a G.S. Ch. 40 or G.S. Ch. 136 condemnation proceeding which fails to allege a prior good faith attempt by the condemnor to acquire the property by negotiation contains a defective statement of a good cause of action.

**2. Eminent Domain § 5— compensation for land containing mineral deposits**

The fact it is not known at the time of the taking that condemned land contains valuable minerals does not prevent the owner from recovering the value of the land as mineral land.

**3. Eminent Domain § 5— compensation for land containing mineral deposits**

In determining the compensation in eminent domain proceedings, the existence of valuable mineral deposits in the land taken constitutes an element which may be considered insofar as it influences the market value of the land, but the award may not be reached by separately evaluating the land and the deposits.

**4. Eminent Domain § 6— compensation for land containing stone deposit**

In determining the amount of compensation in a highway condemnation proceeding, the landowners are entitled to have the jury consider the existence of a stone deposit discovered on the land during construction of the highway insofar as it influenced the fair market value of the land at the time of the taking.

**5. Eminent Domain § 6— testimony placing separate value on stone deposit**

In a highway condemnation proceeding, the admission of testimony placing a separate valuation on a stone deposit on the property taken is error.

**6. Eminent Domain § 6— opinion as to highest and best use**

In a highway condemnation proceeding, the court committed error in admitting opinion testimony as to the highest and best use of the property at the time of the taking which was based partially on the "evidence in this case," the opinion invading the province of the jury and it not being known what evidence in the case the witness considered.

**7. Eminent Domain § 6— special benefits**

Where the grading contract with the Highway Commission granted the grading contractor all stone cut from the right of way not used in the highway project, payments made to the landowners under a contract in which the grading contractor agreed to pay the landowners for stone cut

from the right of way not used in the highway project do not constitute a special benefit to the landowners which may be considered by the jury in assessing damages against the Highway Commission for the property taken for the highway.

**8. Eminent Domain § 6— general and special benefits defined**

General benefits are those which arise from the fulfillment of the public object which justified the taking; special benefits are those which arise from the peculiar relation of the land in question to the public improvement.

**9. Eminent Domain § 6— general or special benefits — increase in value of remaining property**

In a proceeding to assess damages for property taken for highway purposes, the court erred in instructing the jury that it should not concern itself with general or special benefits where testimony was presented that the new highway increased the value of defendant's remaining property as a quarry site for a stone deposit discovered on the property during the highway construction, the existence of the stone deposit being considered by the jury in determining the fair market value of defendants' property at the time of the taking, and the Highway Commission being entitled to have the jury consider the evidence of increased value as a quarry site upon the question of general or special benefits.

APPEAL by plaintiff from *Bryson, J.,* November 20, 1967 Session of RUTHERFORD Superior Court.

This proceeding was instituted by plaintiff, the North Carolina State Highway Commission, on 3 January 1966 for the purpose of condemning a portion of defendants' land. The condemnation was made in connection with a project to relocate U. S. Highway 74 in Rutherford County, Highway Project # 8.188 3401. The plaintiff deposited $1,400 into Court as its estimate of just compensation.

The defendants' property affected by the taking consisted of 35.02 acres (including 4.43 acres subject to a railroad right of way) of farm and woodland on which was situate a house and other outbuildings. The tract was located in Rutherford County, North Carolina.

The State Highway Commission appropriated 7.66 acres (of which .47 acre was subject to the railroad right of way). The defendants' property remaining after the appropriation lay on both sides of the fully controlled access U. S. Highway 74. There was no direct access between the two remaining portions of the defendants' property after the taking. There was no evidence that any of the improvements on the land were destroyed by the appropriation.

During the construction of the highway on the appropriated land the grading contractor encountered stone at a depth of 20 to 25 feet below the surface. The grading of the highway bed on the appro-

priated property reached a maximum depth of more than 40 feet. Much of the material excavated from this cut was stone suitable for crushing.

In its contract with the grading contractor the Highway Commission granted to the grading contractor all of the stone cut from the right of way to the extent it was necessary to cut it for the purpose of lowering the grade for purposes of the roadbed, but excepted the stone necessary for use on the instant project. The grading contractor, independent of any contract with plaintiff and for reasons not explained by the record, the briefs, or argument, entered into a contract with defendants whereby the grading contractor agreed to pay to the defendants 4¢ per ton for all stone cut from the right of way and sold to parties for use other than on the instant project. The plaintiff's evidence tended to show that about 45,000 tons of stone were sold to parties for use other than on the instant project.

After construction on the project began defendants, for the sum of one dollar, executed an option to another contractor for a lease for three years. This lease would be for quarrying rights on the remainder of defendants' property. If the option to lease is exercised the lessee is to pay defendants $8,000.00.

No quarry existed on the property prior to the instant project, nor had the defendants ever had the property appraised for quarrying purposes. However, there was evidence that both parties knew that stone did exist below the surface of the land.

Defendants offered the testimony of various witnesses whose opinion evidence tended to show that prior to the appropriation the entire property had a fair market value of $100,000 to $115,500, and after the appropriation the remainder had a fair market value of $12,000 to $13,250. The Highway Commission offered the testimony of various witnesses whose opinion evidence tended to show that the fair market value of the property prior to the taking was $12,000 to $17,525 and that the value of the remaining portion after the taking was $10,600. The Highway Commission's witnesses assigned no separate valuation to the underlying stone deposit in arriving at their opinions as to the value of the property before and after the taking.

The jury returned a verdict of $30,000. From entry of the judgment in accordance with the verdict, the Highway Commission appealed.

*T. W. Bruton, Attorney General, by Harrison Lewis, Deputy Attorney General, for Highway Commission, plaintiff appellant.*

*Hamrick and Hamrick, by J. Nat Hamrick, Attorneys for defendant appellees.*

BROCK, J.

This case was first argued in this Court on 27 March 1968. Thereafter on 23 May 1968, and pursuant to the provisions of Rule 31 of the Rules of Practice in this Court, it was ordered by the Court that the case be set for reargument during the week of 2 September 1968 upon the following questions:

"(1) Under G.S. Chaps. 40 and 136, is it necessary for the condemnor to make a good faith attempt to purchase the subject property; and to allege in the complaint, or the declaration of taking, the prior good faith attempt in order for a complaint in a condemnation proceeding to state a cause of action?

"(2) If so, does the failure to so allege constitute a jurisdictional defect so as to require the court *ex mero motu* to take notice and dismiss; or may the defect be cured by amendment, if allowed in the discretion of the court?"

The questions which were before the Court on reargument during the week of 2 September 1968 have been exhaustively discussed in an opinion by Mallard, C.J., in *Highway Commission v. Matthis*, 2 N.C.App. 233, filed 18 September 1968.

[1] For the reasons stated in the opinion by Mallard, C.J., we hold that the complaint in this case alleges a defective statement of a good cause of action, but because of the admissions in the answer, it cannot now be attacked by the defendants herein, or anyone else.

We proceed now to a consideration of the questions raised upon the appeal which was argued before us upon the original arguments on 27 March 1968.

[4] Neither party has cited, and our research has not disclosed, a case in North Carolina which determines the question of whether mineral, ore, sand, gravel, or other deposits are to be considered in the valuation of land in condemnation proceedings, where such deposit was not disclosed until discovery by the condemnor in construction of the project but before an adjudication of just compensation. However, the general rule that prevails in this state would seem to encompass the right of the landowner to have his property valued with consideration given to a deposit of this nature. In holding that fair market value of land was not limited to its value as undeveloped land, our Supreme Court in *Barnes v. Highway Commission*, 250 N.C. 378, 109 S.E. 2d 219, stated the rule as follows:

"In estimating the fair market value of land before and after the appropriation of a portion thereon for public use, all the capabilities of the property, and all the uses to which it may be applied, or for which it is adapted, which affect its value in the market are to be considered. In short, everything which affects the value of the property taken in relation to the entire property affected must be considered, for compensation must be full and complete. But all the factors affecting value must be considered only with respect to their effect upon the fair market value of the property, as of the time immediately before and immediately after the taking in the then state of the property as a whole." It must be noted however that the last sentence in the above quoted rule constitutes a limitation upon the valuation of "capabilities" of the property, and this limitation is further clarified in *Barnes* as follows: "It is proper to show that a particular tract of land is suitable and available for division into lots and is valuable for that purpose, but it is not proper to show the number and value of lots as separated parcels in an imaginary subdivision thereof. In other words, it is not proper for the jury in these cases to consider an undeveloped tract of land as though a subdivision thereon is an accomplished fact. Such undeveloped property may not be valued on a per lot basis. The cost factor is too speculative."

[2, 3]    In 27 Am. Jur. 2d, Eminent Domain, § 290, p. 93, the following is stated: "The fact that it is not known at the time of the taking that the land contains valuable minerals does not prevent the owner from recovering the value of the land as mineral land."

"The rule ordinarily applicable . . . is that in determining the compensation in eminent domain proceedings the existence of valuable mineral deposits in the land taken constitutes an element which may be considered insofar as it influences the market value of the land. The general rule has been applied indiscriminately to all forms of mineral deposits, such as coal, ore, gold, fire clay, sand and gravel, and stone or limestone. [H]owever, . . . the award may not be reached by separately evaluating the land and the deposits, since the latter, being only one element among many in determining the market value of the land, cannot be considered as an independent factor the value of which is to be added to the value of the land." 27 Am. Jur. 2d, Eminent Domain, § 290, p. 91. See also, 29A C.J.S., Eminent Domain, § 174, p. 735.

[4]    The general rule, as gathered from other jurisdictions and quoted above, with respect to the existence of mineral deposits in land taken by condemnation, is consistent with the holdings of our

Supreme Court. We hold therefore that defendants were entitled to have the existence of the stone deposit on their land considered by the jury insofar as it influenced the fair market value of the land at the time of the taking.

[5]     The Highway Commission assigns as error the admission of testimony from the landowners' witness, Bruce Hoyle, as follows:

"MR. HAMRICK:    Mr. Hoyle, do you have an opinion satisfactory to yourself as to the fair market value of the merchantable stone in the ground of the Thomas Mode property on January 3, 1966, per ton?

"MR. HUDSON:    Objection.

"THE COURT:    Objection overruled, if he knows of his own knowledge.                    EXCEPTION No. 7.

"Answer:    5¢ a ton."

Previously, the landowners' witness, David Dunn, had been allowed to testify as follows:

"MR. HAMRICK:    Let me ask him this. Do you have an opinion satisfactory to yourself, from your examination of the right of way of the road and your examination of the stone, how many tons of quartz monsonite stone could be removed from a 100 foot quarry?

"MR. HUDSON:    Objection.

"THE COURT:    Objection overruled.

"Answer:    Yes. To a depth of 100 feet beneath the right of way of the highway, I calculate a quantity of stone at 2,458,000 tons. I made an exhibit showing the cut and showing the type of stone I found in the right of way."

It is quite obvious that the effect of this testimony was to separately value the stone deposit on a per ton basis. This the landowners were not entitled to do. See, 27 Am. Jur. 2d, Eminent Domain, § 290, p. 91; cf., *Barnes v. Highway Commission, supra*. This assignment of error is sustained.

[6]     The Highway Commission assigns as error the admission of testimony from the landowners' witness Marion R. Griffin, as follows:

"MR. HAMRICK:    Mr. Griffin, in your examination of the Mode property and evidence in this case, state whether or not you have an opinion satisfactory to yourself as to what the

highest and best use of the Mode property could have been put to on January 3, 1966, do you have such an opinion?

"MR. HUDSON: Objection.

"THE WITNESS: Yes, sir.

"THE COURT: Objection overruled.    EXCEPTION No. 9.

"MR. HAMRICK: What is that opinion?

"THE WITNESS: Rock quarry, what it's being used for."

The witness may have been qualified to give his opinion from knowledge of the Mode property as to its highest and best use at the time of the taking, but it was improper for him to base his opinion even partially upon *the evidence in this case*. Aside from invading the province of the jury to determine the highest and best use from the evidence in the case, the vice in this testimony is that it is not known what evidence in the case he considered. This assignment of error is sustained.

[7]    The Highway Commission excepts to the Court's instruction to the jury that there is no evidence of general or special benefits. The trial judge instructed the jury in part as follows:

". . . the Court instructs you, Members of the Jury, that there is no evidence of general or special benefits for your consideration under this rule of law, and you will not concern yourself with any benefits in arriving at the fair market value of the remainder of the property taken."

The Highway Commission argues that the evidence of landowners' contract with the grading contractor for payment to landowners at the rate of 4¢ per ton for all stone cut from the right of way and sold to parties for use other than on the instant project is competent to be considered by the jury as a special benefit.

The contract between the Highway Commission and the grading contractor granted to the grading contractor all the stone cut from the right of way which was not necessary to be used on the instant project. The reasonable assumption is that the Highway Commission received a more favorable bid from the grading contractor by reason of this provision. Having granted the stone to him, it became the property of the grading contractor. This was recognized by the Highway Commission by its purchase of some 20,000 tons of this very stone for use on other projects. If the stone belonged to the grading contractor, certainly he was free to dispose of it as he wished. As set out in the statement of facts, there has been no explanation by the record, the briefs, or argument of any reason why the grad-

ing contractor was willing to pay defendants the sum of 4¢ per ton for stone sold; during argument we posed the precise question to counsel on both sides but all disclaimed any knowledge. There is nothing in the record to support a conclusion, or inference, that the construction of the highway gave the defendants the right to receive 4¢ per ton from the grading contractor, and it cannot therefore be said that construction of the highway bestowed this as a special benefit. It appears to be a special benefit bestowed upon defendants by the grading contractor, and we see no reason under the law that the Highway Commission has the right to claim this payment as a set off against damages which might be assessed against the Highway Commission for the taking of a portion of defendants' property.

Insofar as the judge's charge to the jury relates to payments under the contract between the grading contractor and defendants, we hold it was not error.

[9]   The Highway Commission further argues that the charge was erroneous because the evidence of increased value of the remainder of defendants' property after the taking was competent for the jury to consider as a special benefit.

[8]   "The most satisfactory distinction between general and special benefits is that general benefits are those which arise from the fulfillment of the public object which justified the taking, and special benefits are those which arise from the peculiar relation of the land in question to the public improvement. Ordinarily the foregoing test is a satisfactory one, though sometimes difficult to apply. In other words, the general benefits are those which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment. The special benefits are ordinarily merely incidental and may result from physical changes in the land, from proximity to desirable object, or in various other ways." *Templeton v. Highway Commission,* 254 N.C. 337, 118 S.E. 2d 918.

[9]   Having held that defendants are entitled to have the existence of the stone deposit on their land considered by the jury insofar as it influenced the fair market value of the land at the time of the taking, it follows that it is competent for the Highway Commission to show what, if any, effect the construction of the highway had upon the land with respect to its value as a quarry.

One of defendants' witnesses, Robert Burns, testified, among other things, as follows: "Aside from the instant highway project — the relocation of U. S. 74 — I would not have considered the Mode property a feasible quarry site." And later on redirect exam-

ination he stated: "Since this road is through there, I think there is a good market for the stone as long as the road is there. When the road is completed I don't think then it is justifiable on the market." Another of defendants' witnesses, Marion R. Griffin, testified that in giving his opinion that the highest and best use of the property was for a quarry, that the highway going through the property "would increase the land tremendously."

The jury should have been allowed to consider this testimony in determining what general or special benefits, if any, the defendants received by reason of the construction of the highway. *Templeton v. Highway Commission, supra.* It was therefore error for the judge to rule out consideration of this evidence by his instruction that they were not to concern themselves with any benefits in arriving at the fair market value of the remainder of the property.

There are other assignments of error which may have merit, but because the case must be tried again we refrain from discussing them; they probably will not arise again upon a new trial.

New trial.

MALLARD, C.J., and PARKER, J., concur.