CITY OF HILLSBOROUGH, Plaintiff v. SAMUEL M. HUGHES, Defendant

No. COA99-1393

(Filed 5 December 2000)

1. **Eminent Domain— fair market value of land—timber value—unit rule—not adopted**

The trial court in a condemnation action properly admitted testimony regarding the separate value of timber in estimating the fair market value of the land and correctly instructed the jury on the issue. The unit rule is not adopted in this case; the jury should be aware of enhancing components in determining fair market value because this is testimony which any informed appraiser or purchaser would consider. It is not necessarily misleading to allocate values to enhancing components where the ultimate opinions of expert appraisers fix the difference between the value of the property as a whole before the taking and the value after the taking. In those instances where it may be misleading for a witness to add separate values, opposing counsel is

**CITY OF HILLSBOROUGH v. HUGHES**

[140 N.C. App. 714 (2000)]

permitted on cross-examination to illustrate the potential invalidity of this approach by bringing out the value of comparable properties sold as a unit.

**2. Evidence— eminent domain—value of land—basis of expert opinion**

The testimony of an expert in a condemnation action as to the value of timber on the property sufficiently reflected the fair market value at the time of the taking in April 1997 where the numbers composing his estimate were in part derived from a September 1996 appraisal, but he sufficiently updated the estimate by considering the timber market between the appraisal and the taking.

**3. Evidence— eminent domain—value of land—expert testimony—reasonable degree of certainty**

The opinion of an appraiser in a condemnation action was to a reasonable degree of certainty where there was no indication of a problem with regard to testimony concerning his report, but the Town injected new considerations into the valuation methodology on cross-examination. His uncertainty as to this new matter did not disqualify him as an expert; it was for the jury to determine the weight and significance of his testimony.

Appeal by plaintiff from judgment entered 7 June 1999 by Judge Wiley F. Bowen in Orange County Superior Court. Heard in the Court of Appeals 20 September 2000.

*G. Nicholas Herman for the plaintiff-appellant.*

*D. Michael Parker for the defendant-appellee.*

LEWIS, Judge.

The Town of Hillsborough appeals from a judgment fixing compensation in a condemnation proceeding. The property involved is a 93.112-acre parcel of land located in Cedar Grove Township, Orange County, North Carolina. The Town condemned 79.767 acres of this parcel for construction of a reservoir, leaving a 13.345-acre parcel remaining. Pursuant to N.C. Gen. Stat. § 40A-64(b)(I), the jury awarded just compensation as the difference between the fair market value of the entire tract immediately before the taking and the fair market value of the remainder immediately after the taking, fixing compensation for the 79.767-acre tract at $323,073. A judgment in

that amount was entered on 7 June 1999, from which the Town appeals.

**[1]** The first issue on appeal surrounds the methods of valuation used by one of Hughes's expert witness, Charles J. Moody, at trial. The evidence indicates the tract of land taken in this case had on it a significant amount of timber. The Town contends the trial court erred in admitting Moody's testimony as to the separate value of this timber in estimating the fair market value of the land. The Town argues this separate valuation of timber violated the "unit rule" of valuation, a rule that prevents an award of just compensation from assigning separate values to component parts of the property and requires that improved property be valued as a whole. 4 Julius Sackman, *Nichols on Eminent Domain* § 13.09[5] (rev. 3d ed. 1997). For example, an appraiser cannot testify to one value for the land, another value for the water rights, and another value for the timber. As to the rationale underlying this rule, it has been stated that "[t]he fair cash market value of improved property is not the sum of its component parts, i.e., the land and improvements valued separately. To avoid misleading and confusing the jury, the evidence should be confined to the value directly at issue, which is the value of the improved property as a whole." *Department of Transp. v. First Bank of Schaumburg*, 631 N.E.2d 1145, 1149 (Ill. App. Ct. 1992) (citations omitted); *see also Department of Transp. v. Willis*, 299 S.E.2d 82, 83 (Ga. Ct. App. 1983) ("[Evidence of] all elements and uses of the land may be taken into consideration to determine the market value of the land taken and the consequential damages to the land not taken. However . . . a witness may not be permitted to testify separately as to the value of each element. The land and its natural components are one subject matter and what is required is evidence of the fair market value of that one subject matter.") (citations omitted); *Cross v. State*, 36 A.D.2d 361, 362 (N.Y. App. Div. 1971) (holding it impermissible for witness to accord value of marketability of the trees separated from the land plus a distinct value for the naked land).

Here, Charles J. Moody, an expert real estate appraiser specializing in the valuation of timber properties, estimated the fair market value of the entire 93.112-acre tract to be $358,500 and the value of the remainder to be $33,500, valuing the 79.767-acre tract at $325,000. When asked to explain the basis for these conclusions, Moody testified he first valued the land based on twelve comparable sales, from which he estimated the fair market value of the property to be $2500 per acre. Concluding that an astute seller would sell approximately

$125,000 of timber before putting the property on the market, he then adjusted the value of the property to reflect consideration of the timber. Moody based his estimations on a "Forest Inventory Data Summary Appraisal Report" ("the report") compiled by Richard J. Bernard, Jr., defendant's other expert witness.

Hughes also called Bernard, an expert in timber valuation, to corroborate Moody's testimony regarding the report. The report was prepared on 25 September 1996, in response to a letter sent to Hughes by the Town urging him to have the timber on the tract appraised. The report estimated the fair market value of a clear cut of the timber (removing all marketable timber) located on the condemned parcel to be $160,000, and the fair market value of a selective cut of the timber (30-80% removal) located on the condemned parcel to be $131,360.

Our courts have never explicitly addressed the propriety of the unit rule. A panel of this Court, however, did prohibit separate valuation testimony in *Highway Comm. v. Mode*, 2 N.C. App. 464, 469, 163 S.E.2d 429, 432 (1968); s*ee also In re Condemnation of Lee*, 85 N.C. App. 302, 305, 354 S.E.2d 759, 763 (1987) (alluding to the unit rule in dicta, in reference to the fair market value of land containing mineral deposits). In *Mode*, the landowner's appraiser in a condemnation case testified as to the separate value of a stone deposit on the land. *Mode*, 2 N.C. at 469, 163 S.E.2d at 432. The experts testified to their value on a per ton basis, stating both the value and quantity. *Id.* The Court ultimately held that the appraiser could not opine a per ton value of the stone, but it did allow the existence of the stone deposits to be considered by the jury "insofar as it influenced the fair market value of the land at the time of the taking." *Id.*

We find *Mode* to be somewhat self-contradictory and all in all, not instructive. The Court did not explain and we cannot discern, practically speaking, how the jury is to consider the existence of the stone deposit where testimony regarding its separate value is prohibited. In our opinion, the *Mode* Court's prohibition of separate valuation testimony prevents an appraiser from explaining the true basis for his estimate of the fair market value of the property. In a condemnation proceeding, the jury is specifically required to determine the fair market value of the property. N.C. Gen. Stat. § 136-112(1) (stating that the measure of damages to be used in condemnation cases in which the State does not take the plaintiff's property in its entirety is to be "the difference between the *fair market value* of the entire tract

immediately prior to said taking and the *fair market value* of the remainder immediately after said taking"). Because testimony regarding the enhancing components of the land is that which any informed appraiser or purchaser would necessarily consider in ascertaining the fair market value of property, *United States v. Wise*, 131 F.2d 851, 852 (4th Cir. 1942), the jury, in determining fair market value, should also be made aware of such enhancing components. Preventing an appraiser witness from disclosing such information seems to be at odds with the practice of real estate appraisal, and prevents an accurate reflection for the jury of the fair market value of the condemned property.

Our own Fourth Circuit shares these concerns with respect to valuation testimony. In *Cade v. United States*, 213 F.2d 138 (4th Cir. 1954), the court refused to prohibit testimony as to the separate valuation of enhancing components of the land. The landowner's expert witness valued the land taken at $35,070, and explained to the jury in detail that he arrived at this sum by separately valuing bottom land, upland, woodland, and buildings. *Id.* at 140. He described in detail the buildings on the property and gave what he considered to be the value of each. *Id.* The trial judge struck his testimony on the ground that in arriving at a fair market value it is not proper to show separate valuations of component parts, i.e., that the testimony violated the unit rule. *Id.* Two other witnesses similarly testified as to the value of granite rock deposit on the land and their evidence was also excluded. *Id.* at 141.

The *Cade* court upheld the expert's method of valuation, noting "The trial judge was correct in thinking that the property should be valued as a whole for the purpose of assessing compensation for the taking; but this does not preclude the admission of testimony showing particular elements of value for consideration by the jury in arriving at the overall value which they are required to find as the basis for compensation." *Id.* at 142. The court concluded that valuation of the land as a whole after giving a valuation of the various parts was justified, since this was the manner in which any man of intelligence would have arrived at a valuation for "ordinary business purposes." *Id.* at 140. The court noted, "[W]e know of no reason why a witness testifying under oath as to his opinions should not arrive at a valuation in the same way." *Id.* at 140.

Two years earlier, the Fourth Circuit addressed this valuation issue with respect to timber. In *United States v. 5139.5 Acres of Land*, 200 F.2d 659, 661 (4th Cir. 1952), the Fourth Circuit reversed

the decision of the trial court to exclude evidence of the separate value of timber. The court in that case stated, "The principal reason given by the trial judge for excluding the evidence . . . that the land and timber should be valued as a whole and not separately, while a sound rule of law, was no reason for excluding the evidence as to the separate value of the timber, which was a matter to be considered in valuing the two together." *Id.*

The principles underlying the Fourth Circuit's refusal to prohibit testimony as to separate components of condemned property was explained in *United States v. 25.406 Acres of Land,* 172 F.2d 990 (4th Cir. 1949):

> Certainly such matters would be considered by any business man in selling, buying or valuing the property; and when the court adopts the standards of the market place in making valuations there is no reason why it should close its eyes to how the market place arrives at and applies the standards . . . ." It is difficult to perceive why testimony, which experience has taught is generally found to be safely relied upon by men in their important business affairs outside, should be rejected inside the courthouse."

*Id.* at 993 (quoting *Wade v. Telephone Co.,* 147 N.C. 219, 225, 60 S.E. 987, 989 (1908)); *see also Wise,* 131 F.2d at 853 (allowing testimony regarding reproduction cost of structural improvements on the property, evidence of the replacement cost of trees and shrubs in arriving at value of property as a whole, since a shrewd purchaser would consider those factors).

In addition, the rationale underlying the unit rule, that the fair market value of improved property is not the sum of its component parts, *see, e.g., First Bank of Schaumburg,* 631 N.E.2d at 1149, is not entirely sound in application. It is not necessarily true that the values of the components of land submitted by an expert will never equal the value of the whole. *North Side Bank v. Urban Redevelopment Authority of Pittsburgh,* 274 A.2d 215, 217 (Pa. Commw. Ct. 1971). However, in those instances where it may be misleading for a witness to add separate values, opposing counsel is permitted on cross-examination to illustrate the potential invalidity of this approach by bringing out the value of comparable properties sold as a unit. *Id.* Where the ultimate opinions of expert appraisers fix the difference between the value of the property as a whole before the taking and the value of the property as a whole after the taking, it is not necessarily mis-

leading to allocate certain values to the enhancing components of property. *Id.*

We thus refuse to adopt the unit rule in this case, and hold that Moody's testimony regarding the separate valuation for the timber was properly admitted into evidence. We note also the jury instruction comports with our holding on this issue. The jury here was instructed as follows:

> The fair market value of any property is the amount which would be agreed upon as a fair price by an owner who wishes to sell, but is not compelled to do so, and a buyer who wishes to buy, but is not compelled to do so . . . . In determining the fair [market] value of the property, you may take into consideration all the factors you conclude affected the fair market value of this property on the date of the taking . . . . If you are persuaded that the existence of the timber on this property affected the market value, you may take this into consideration in your determination of the fair market value of the property. However, you may not add the timber that might have been or could have been removed from this property.

(2 Tr. at 161-62). As previously discussed, the task of the jury is to determine the fair market value of the condemned property. We have concluded that it is proper to consider separate values in determining the fair market value of the property as a whole. As indicated in the instruction, once that fair market value is determined, the jury may not then add any amount for separate enhancing components of the property, which then, would constitute double counting.

[2] The Town next contends that Bernard's testimony as to the value of the timber should have been excluded, as it did not reflect the value at the time of the taking, citing *City of Kings Mountain v. Goforth*, 283 N.C. 316, 322, 196 S.E.2d 231, 236 (1973) (market value of the property is to be determined on the basis of conditions existing at the time of the taking). At the time of trial, Bernard had twice appraised the timber on Hughes's property—once in June 1996 and again in September 1996. The taking occurred on 25 April 1997. At trial, Bernard used the numbers reflected in his September 1996 report to derive an estimated fair market value of the timber in April 1997, arriving at a fair market value $583.16 more than his September 1996 report reflected. He substantiated his opinion by explaining his tracking of the market progression of timber sales since the September 1996 appraisal, and by reviewing market data for the

sale of timber in North Carolina at the time of the taking. Although the numbers composing Bernard's estimate were, in part, derived from his September 1996 appraisal, he sufficiently updated this estimate by considering the timber market during the months between and at the time of the taking. We thus conclude Bernard's testimony sufficiently reflected the fair market value of the timber at the time of the taking.

[3] The Town also contends that Bernard admitted at trial that none of his appraisals were to a reasonable degree of "appraiser" certainty, but were no more than "educated guesses." Specifically, the Town points to its cross-examination of Bernard, in which it asked him to consider the value of the timber on the property given potential "stream buffers," or, areas in which timber may not be cut. The Town asked Bernard to assume such a buffer existed on twenty-five percent of the property, and to adjust accordingly his appraisal of the standing timber which he discussed on direct examination. Bernard responded that an answer would require some investigative work, but estimated the value would be affected from fifteen to thirty percent, and admitted this response was a "guess-timate." (2 Tr. at 16).

Bernard was called by Hughes to testify regarding his timber valuation report of the subject property, and there is no indication in the record or by the Town of a certainty problem in that regard. On cross-examination, the Town, seeking to undermine his report, injected new considerations into the valuation methodology. His uncertainty as to this new matter on cross-examination did not disqualify him as an expert in this case. It was for the jury to determine the weight and significance to be attached to his testimony, which the Town sought to undermine on cross-examination.

In light of our rejection of the unit rule of valuation in this case, it is unnecessary to address the Town's remaining argument.

Affirmed.

Judges WYNN and HUNTER concur.