MALCOLM M. LOWDER, MARK T. LOWDER AND DEAN A. LOWDER, PLAIN-
TIFFS v. ALL STAR MILLS, INC., LOWDER FARMS, INC., CAROLINA
FEED MILLS, INC., ALL STAR FOODS INC., ALL STAR HATCHERIES,
INC., ALL STAR INDUSTRIES, INC., TANGLEWOOD FARMS, INC., CON-
SOLIDATED INDUSTRIES, INC., AIRGLIDE, INC., AND W. HORACE
LOWDER, DEFENDANTS AND CYNTHIA E. LOWDER PECK, MICHAEL W.
LOWDER, DOUGLAS E. LOWDER, LOIS L. HUDSON, INDIVIDUALLY AND AS
GUARDIAN AD LITEM FOR STEVE H. HUDSON, BRUCE E. HUDSON, BILLY J. HUD-
SON, ELLEN H. BALLARD, JENELL H. RATTERREE, DAVID P. LOWDER, JUDITH R.
LOWDER HARRELL, EMILY P. LOWDER CORNELIUS AND MYRON E. LOWDER, IN-
TERVENING DEFENDANTS

No. 8220SC14

(Filed 18 January 1983)

**1. Appeal and Error § 6.2— interlocutory orders affecting substantial rights—
right of appeal**

Orders denying a motion to disqualify plaintiffs' attorneys and authorizing
receivers to settle tax claims against the corporate defendants affect substan-
tial rights which will work injury to the appellants if not corrected before an
appeal from a final judgment and are, therefore, appealable.

**2. Attorneys at Law § 3— former representation of opposing party—discretion to
disqualify attorney**

It is within the discretion of the trial court whether to disqualify an at-
torney for his former representation of an opposing party, and this discretion
must be exercised within the parameters of Canons 4 and 9 of the Code of Pro-
fessional Responsibility of the North Carolina State Bar.

**3. Attorneys at Law § 3— former representation of adverse party—disqualifica-
tion of attorney**

If an attorney has formerly represented an adverse party in matters
substantially related to the subject of the action, the attorney should be dis-
qualified, nothing else appearing, and it is not necessary to show that the at-
torney received confidential information.

Lowder v. Mills, Inc.

**4. Attorneys at Law § 3— discretion to disqualify attorney—effect on expeditious disposal of case**

In exercising its discretion in determining whether to disqualify an attorney, the trial court may consider the right of a party to have counsel of his or her choice and the effect a disqualification would have on the expeditious disposal of the case.

**5. Attorneys at Law § 3— representation of defendant in criminal action—no disqualification to represent plaintiff**

The trial court did not abuse its discretion in the denial of defendants' motion to disqualify plaintiffs' attorneys because they had represented the individual defendant in a criminal action involving matters related to this civil action where the trial court had before it a ruling of the Grievance Committee of the North Carolina State Bar dismissing a complaint against one attorney for plaintiffs based on the same ethical considerations as were before the court; defendant waited 22 months after the action was filed before making the motion to disqualify; and the action is a complicated derivative action for which it would take a substantial amount of time for new attorneys to become familiar.

**6. Judgments § 2— order signed out of county—validity**

An order permitting receivers appointed for the corporate defendants to employ certain counsel was not void because it was signed out of the county where the N.C. Supreme Court had held that the trial judge properly retained jurisdiction in himself after being rotated out of the district.

**7. Notice § 1— order entered without notice to party—absence of prejudice**

Defendants were not prejudiced by the court's entry of an order appointing accountants and attorneys for receivers for the corporate defendants without notice to the individual defendant where a full hearing was conducted on defendants' motion to remove the accountants and receivers.

**8. Attorneys at Law § 3— appointment of plaintiffs' attorneys as counsel for receivers**

The trial court erred in its appointment of plaintiffs' attorneys as counsel for the receivers for the corporate defendants since plaintiffs are attempting to have assets transferred from some corporate defendants to others, and their attorneys should not represent the receivers whose job it is to preserve the assets of all the corporations.

**9. Receivers § 1— refusal to dissolve receivership**

The evidence did not show that corporations in receivership have been so damaged by the receivership that the trial judge abused his discretion in refusing to dissolve the receivership.

**10. Rules of Civil Procedure § 52— interlocutory, unappealable order—findings not required**

The trial court was not required to make findings of fact as requested by defendants in an order denying a motion to vacate a receivership for the corporate defendants since the order was interlocutory and not appealable. Fur-

Lowder v. Mills, Inc.

thermore, defendants were not prejudiced by failure of the trial court to find facts where the court in effect held that the evidence did not require it to change its previous findings of fact made in an order appointing the receivers, and the appellate court can review the evidence and determine whether the trial court was correct in this ruling. G.S. 1A-1, Rule 52(a)(2).

**11. Receivers § 12.1— fees allowed for receivers and accountants and attorneys for receivers**

Fees allowed by the trial court to the receivers and accountants and tax attorneys for the receivers of defendant corporations were reasonable in view of the amount of time involved, the complexity of the case, and the results obtained. Furthermore, the court did not err in allowing fees for work done by the attorneys and accountants before the receivers were formally appointed and while the corporations were in bankruptcy.

**12. Receivers § 12.1— motions for fees—determination on basis of affidavits**

The trial court could properly determine motions for fees for receivers and their attorneys and accountants on the basis of affidavits, and defendants did not have the right to cross-examine the applicants for fees. G.S. 1A-1, Rule 43(e).

**13. Receivers § 12.2— settlement of tax claims by receivers—approval by court**

It was reasonable for the trial court to approve the settlement of tax claims against the corporate defendants by receivers of the corporations, notwithstanding there may be defenses to some of the tax claims which the receivers propose to pay, where there were 14 docketed tax cases against the corporations totalling more than $5 million in interest and penalties; the proposed settlement for claims of the Internal Revenue Service was $540,080 and for claims of the N.C. Department of Revenue was $49,933; there were other claims which the Internal Revenue Service conceded under the settlement which it would not concede if there were no settlement; and substantial evidence was presented as to the possibility that the corporations would have to pay a much larger amount if the tax claims were not settled.

**14. Receivers § 7— order permitting sale of land by receivers—premature appeal**

The appellate court will not rule on the propriety of the trial court's order permitting receivers of a corporation to sell land owned by the corporation until the sale is confirmed or confirmation is denied. G.S. 1-505.

**15. Judges § 5— motion for recusal—ruling on other motions before referral to another judge**

In an action to recover damages allegedly caused by the individual defendant's mismanagement of various corporations, the trial judge acted properly in ruling on 19 motions before referring defendants' motion for recusal to another judge for a hearing where the trial judge had conducted hearings on the 19 motions for three weeks before defendants made the motion to recuse.

APPEAL by defendants and intervening defendants from *Seay, Judge.* Orders entered 2 October 1981 in Superior Court, STANLY County. Heard in the Court of Appeals 20 October 1982.

The plaintiffs filed this action on 11 January 1979 seeking damages on the ground that W. Horace Lowder had abused his duties as an officer of the corporate defendants. In an order filed 9 February 1979, Judge Seay appointed receivers for the corporations. In April 1979 the corporate defendants filed for protection under Chapter XI of the United States Bankruptcy Act. The proceedings in Superior Court were automatically stayed until February 1980 when the corporations were discharged from bankruptcy. Judge Seay entered orders retaining jurisdiction of all matters pending in the litigation notwithstanding his rotation from the district, authorizing the payment of fees to the attorneys and accountants, and holding W. Horace Lowder in contempt of court for violating orders of the court. Our Supreme Court in *Lowder v. Mills, Inc.*, 301 N.C. 561, 273 S.E. 2d 247 (1981) affirmed the orders appointing the receivers and retaining jurisdiction. It reversed the order authorizing the payment of attorney and accountant fees. It also reversed a decision of the Court of Appeals at 45 N.C. App. 348, 263 S.E. 2d 624 (1980) which had reversed the order holding W. Horace Lowder in contempt.

In 1980 other stockholders of the corporations intervened as defendants. On 2 October 1981 Judge Seay ruled on 19 motions that had been filed in the case. W. Horace Lowder and the intervening defendants appealed from the rulings on nine of the orders. Further facts will be set forth in the body of this opinion.

*Moore and Van Allen, by John T. Allred and Randel E. Phillips, for plaintiff appellees.*

*DeLaney, Millette, DeArmon and McKnight, by Ernest S. DeLaney, for defendant appellants.*

*Hopkins, Hopkins and Tucker, by William C. Tucker, for intervening defendant appellants.*

WEBB, Judge.

[1]   We note at the outset that all the orders from which appeals are taken are interlocutory. We believe the order denying the motion to disqualify the plaintiffs' attorneys, which is the subject of the appellants' first assignment of error, and the order authorizing the receivers to settle the tax claims against the corporate defendants, which is the subject of the appellants' sixth assign-

ment of error, affect substantial rights which will work injury to the appellants if not corrected before an appeal from a final judgment. These orders are appealable. *See Industries, Inc. v. Insurance Co.*, 296 N.C. 486, 251 S.E. 2d 443 (1979). In our discretion, we shall consider some of the appellants' other assignments of error.

The appellants first contend it was error to deny their motion to disqualify the plaintiffs' attorneys. The defendants made a motion on 17 March 1981 to disqualify the plaintiffs' attorneys on the ground they had a conflict of interest. The record shows that prior to the filing of this action, W. Horace Lowder was convicted in federal court of income tax evasion. Mr. Lowder represented himself at trial and on appeal. He then retained the law firm of Brown, Brown and Brown. R. L. Brown, Jr. and R. L. Brown, III of that firm petitioned for a rehearing and, with the law firm of Arent, Fox, Kintner, Plotkin and Kahn of Washington, D.C., they petitioned the United States Supreme Court for a writ of certiorari. Both petitions were denied. R. L. Brown, III also represented Mr. Lowder in an attempt to have his sentence reduced and in an attempt to let Mr. Lowder serve the sentence in the Stanly County jail. The matters in which Mr. Brown represented Mr. Lowder in his criminal case are now involved in this civil action.

After the Brown firm had completed its representation of W. Horace Lowder, Malcolm Lowder conferred with R. L. Brown, III in regard to the problems of the corporations. Malcolm Lowder became dissatisfied with the manner in which the corporations had been managed and determined to bring this action. Malcolm Lowder retained R. L. Brown, III, who associated the law firm of Moore and Van Allen. Moore and Van Allen signed the complaint as plaintiffs' attorneys, but the Brown firm will receive a part of any contingent fee received by Moore and Van Allen.

On 24 March 1979, W. Horace Lowder filed a grievance with the North Carolina State Bar against R. L. Brown, III in which he stated that Mr. Brown had represented him on a petition for a writ of certiorari to the United States Supreme Court, that his brother, Malcolm M. Lowder, had stated that he was represented by Mr. Brown in an action to have W. Horace Lowder removed as manager of the corporation, that Mr. Brown had arranged for a

Charlotte law firm to represent his brother in a suit to have W. Horace Lowder removed from the management of the corporations, and that Mr. Brown had furnished the Charlotte law firm transcripts of the criminal trial. On 20 July 1979 the Grievance Committee of the North Carolina State Bar notified Mr. Brown "that after investigation and hearing, no probable cause was found" and the complaint was dismissed.

Judge Seay found as to the Brown firm that its representation of W. Horace Lowder "was extremely narrow in scope and necessarily based on matters of public record," that W. Horace Lowder's "exchanges of information with the Brown firm were confined to matters of public record or matters not substantially related to the present action," that the Grievance Committee of the North Carolina State Bar found no probable cause and dismissed the complaint after an investigation and hearing on essentially the same matters that were asserted in the motion, and that the "movant has failed to present this issue in a timely fashion." Judge Seay found as to Moore and Van Allen that since no confidences were shared between W. Horace Lowder and the Brown firm, none were passed to Moore and Van Allen, that the Brown firm and "Moore and Van Allen do not constitute a 'firm' for the purposes of imputing knowledge pursuant to Canon Four of the North Carolina Code of Professional Responsibility," and that plaintiffs would "suffer considerable prejudice in having their choice of counsel disqualified at this stage of the proceedings." The court denied the motion to disqualify the plaintiffs' counsel. The appellants assign error to this ruling.

The Code of Professional Responsibility of the North Carolina State Bar, Appendix VII, of the General Statutes, provides in pertinent part:

## Canon 4

### A Lawyer Should Preserve the Confidences and Secrets of a Client

\* \* \*

EC4-4 The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client. This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source

of information or the fact that others share the knowledge.
. . .

EC4-5 A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client and a lawyer should not use, except with the consent of his client after full disclosure, such information for his own purposes. . . . Care should be exercised by a lawyer to prevent the disclosure of the confidences and secrets of one client to another, and no employment should be accepted that might require such disclosure.

EC4-6 The obligation of a lawyer to preserve the confidences and secrets of his client continues after the termination of his employment . . . .

\*     \*     \*

Canon 9

A Lawyer Should Avoid Even the Appearance
of Professional Impropriety

\*     \*     \*

EC9-6 Every lawyer owes a solemn duty to uphold the integrity and honor of his profession . . . and to strive to avoid not only professional impropriety but also the appearance of impropriety.

We can find no precedent in this jurisdiction for the question raised by this assignment of error. In *Swenson v. Thibaut*, 39 N.C. App. 77, 250 S.E. 2d 279 (1978), *cert. denied*, 296 N.C. 740, 254 S.E. 2d 181 (1979), this Court held that the plaintiffs' attorneys should not be disqualified. In that case the plaintiffs' attorneys had appeared for a corporation which was a nominal defendant in the case then being litigated, but whose actual interests coincided with the interests of the plaintiffs.

[2-4]   There have been cases from other jurisdictions dealing with this question. *See, e.g., State of Ark. v. Dean Food Products Co., Inc.*, 605 F. 2d 380 (1979); *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F. 2d 168 (1979); *Akerly v. Red Barn System, Inc.*, 551 F. 2d 539 (1977); *NCK Org'n Ltd. v. Bregman*, 542 F. 2d 128 (1976), and Annot., 52 ALR 2d 1243 (1957). We

believe the rule as established in these cases is that it is within the discretion of the trial court as to disqualifying an attorney for his former representation of an opposing party. This discretion must be exercised within the parameters of Canons 4 and 9. Under these Canons, if an attorney has formerly represented an adverse party in matters substantially related to the subject of the action, the attorney should be disqualified, nothing else appearing. It is not necessary to show the attorney received confidential information. The ethical duty of an attorney under EC4-4 is broader than the attorney-client evidentiary privilege. An attorney should not use against a former client information he has received while representing that client although the information is not confidential and is available to others. A party can waive his right to have his former attorney disqualified. In exercising its discretion in determining whether to disqualify an attorney, the trial court may consider the right of a party to have counsel of his or her choice and the effect a disqualification would have on the expeditious disposal of the case.

[5] In the instant case, the Brown firm had represented the defendant in matters related to this case. We cannot hold, however, that Judge Seay abused his discretion in refusing to disqualify the Brown firm or the Moore and Van Allen firm. The court had before it a ruling from the Grievance Committee of the North Carolina State Bar in which it dismissed a complaint against R. L. Brown, III for the same ethical considerations as were before the court. The defendant waited 22 months from the time the action was filed before moving to disqualify the plaintiffs' attorneys. The case had twice been appealed and the corporations had been placed in bankruptcy and later discharged from bankruptcy before the motion to disqualify was made. This is a complicated derivative action and it would take a substantial amount of time for new attorneys to familiarize themselves with the case. We hold there was not an abuse of discretion by the court in refusing to disqualify plaintiffs' counsel. Since we have overruled this assignment of error, we do not discuss the different ethical positions of Brown, Brown and Brown and Moore and Van Allen.

In their second assignment of error, the appellants contend an order entered by Judge Seay on 15 February 1979 is void and should have been vacated. In February 1979 at the Richmond

County Courthouse, Judge Seay met with the receivers and with John Allred of the firm of Moore and Van Allen and R. L. Brown, III of the Brown firm. None of the appellants received notice of the meeting and none of them were present. As a result of the hearing at this meeting, Judge Seay entered an order in which he authorized the receivers to employ Moore and Van Allen as attorneys to render legal advice "concerning day-to-day activities, and the marshalling of assets, and pursuit of claims against third parties, and for the purpose of continuing the prosecution of this action to the end that any assets which should belong to All Star Mills or Lowder Farms are identified, and returned to them." Judge Seay also allowed the receivers to retain R. L. Brown, III, and Arent, Fox, Kintner, Plotkin and Kahn of Washington, D.C. as special tax counsel to defend the Tax Court litigation, and to employ Coopers and Lybrand as accountants.

Judge Seay recited that he had concluded that the burden was upon W. Horace Lowder "to defend All Star Foods, All Star Hatcheries, All Star Industries, Consolidated Industries, and Airglide, as well as himself, *in this action*, because if these defendants have any liability to the other corporated [sic] defendants, it is the direct result of actions taken by Horace Lowder . . . ." The court ordered that W. Horace Lowder could retain counsel on behalf of these companies notwithstanding the appointment of the receivers and that he would be personally responsible for any legal fees for such counsel.

Judge Seay recited further that the only potential conflict which he could see was that the receivers were acting on behalf of all the corporations except Carolina Feed Mills, Inc. even though two of them may have claims against the rest. He found as a fact that no current conflict existed and ordered that if an actual conflict appeared to arise in the course of the litigation, the parties should report it to the court.

The appellants argue that this order should be held void for several reasons. They say first that the findings of fact were not supported by the evidence. The record does not disclose what evidence was introduced at the hearing. There had been evidence offered at the January hearing on the appointment of the receivers which would fully support all findings of fact made by Judge Seay in his February order. We hold that he could rely on this evidence.

[6]  The appellants also argue that this order should be held void because it was signed out of Stanly County. Our Supreme Court has held that Judge Seay properly retained jurisdiction in himself after being rotated out of the district. *Lowder v. Mills, Inc., supra,* at 579, 273 S.E. 2d at 258. We believe we would have to overrule our Supreme Court to say he could not sign an order in Richmond County. This we cannot do.

[7]  The third reason the appellants advance for voiding this order is that it was entered without notice to the corporate defendants or individual defendants. The intervening defendants were not parties to the litigation at the time this order was signed. Notice to them was not required. The appointment of attorneys for the receivers, including the appointment of tax attorneys, affected a right of W. Horace Lowder. Notice should have been given to him. *See Hagins v. Redevelopment Comm.,* 275 N.C. 90, 165 S.E. 2d 490 (1969) and *Shepherd v. Shepherd,* 273 N.C. 71, 159 S.E. 2d 357 (1968). We do not believe the appellants were prejudiced by this error, however. Judge Seay conducted a full hearing on the appellants' motion to remove the accountants and attorneys for the receivers. The appellants had an opportunity to present any reasons they may have had to have them removed.

[8]  The last reason the appellants advance for removal of the receivers' attorneys is that there is a conflict of interest. The appellants argue that one of the purposes of this action is to take assets from some of the corporations and give those assets to others. For that reason they say it is not proper for an attorney who is trying to accomplish this to serve as an attorney for the receivers of the corporations from whom he is trying to remove assets. We find no error in Judge Seay's authorizing the receivers to retain R. L. Brown, III and Arent, Fox, Kintner, Plotkin and Kahn to represent the receivers in the tax litigation. It was in the interests of all parties to minimize the taxes of the corporate group. There is no conflict in this regard. It may be that when a final judgment is entered, it will be found that some of the corporations have paid a disproportionate part of the taxes. Any adjustments which should be made may be done so in the final judgment.

We believe the court committed error in appointing Moore and Van Allen to represent the receivers. Among the things the attorneys for the receivers were directed to do is to render legal advice to the receivers "for the purpose of continuing the prosecution of this action to the end that any assets which should belong to All Star Mills or Lowder Farms are identified, and returned to them." The receivers were appointed to preserve the assets of all the corporations. If the plaintiffs are successful, the assets of some of the corporations may be transferred to other corporations in the group. We believe the receivers should be neutral in this contest. This case presents a different picture than most receiverships in which there is only one corporation with assets to be protected. Since the plaintiffs are attempting to transfer assets from some corporations to others, we do not believe their attorneys should represent the receivers whose job is to preserve the assets of all the corporations.

We sustain in part and overrule in part the appellants' second assignment of error.

In their third assignment of error, the appellants contend it was error for the Superior Court not to amend certain findings of fact and conclusions of law in the order appointing the receivers and in not declaring the order void as against public policy. The motion, the denial of which is the subject of this assignment of error, was filed on 19 February 1979. In this motion, W. Horace Lowder and the corporate defendants asked the court to amend the findings of fact, conclusions of law, the preliminary injunction, and the order appointing the receivers. The appellants argue it was error not to grant his motion and release certain of the corporations from the receivership. They argue further that the record shows that at the show cause hearing on the appointment of receivers, the corporations did not have an attorney but were represented by W. Horace Lowder, a layman. They contend it is a violation of public policy for a layman to act as an attorney, and the order appointing the receivers should be vacated for that reason. The intervening defendants argue that they hold a majority of the stock in All Star Mills, Inc. and Lowder Farms, Inc. and were not served with any notice before the receivers were appointed. They argue that their due process rights were violated when they were deprived of control of the corporations without an opportunity to be heard.

The subject of the appellants' third assignment of error has been before our Supreme Court in *Lowder v. Mills, supra.* Our Supreme Court has affirmed the appointment of receivers in this case. They discussed the adequacy of the findings of fact and the evidence to support them as well as the lack of notice to the stockholders. They did not discuss W. Horace Lowder's representation in court of the corporations, but that feature of the case was in the record. We believe we would have to overrule the Supreme Court to sustain the appellants' third assignment of error, which we cannot do. This assignment of error is overruled.

On 19 March 1980 DeLaney, Millette, DeArmon and Mc-Knight, as attorneys for the seven corporate defendants, filed a motion to vacate the order placing them in receivership. On 13 March 1981 the same law firm filed motions on behalf of the corporate defendants other than All Star Mills, Inc. and Lowder Farms, Inc. to vacate the receivership. The denial of these motions is the subject of the appellants' fourth assignment of error. A good portion of the appellants' argument is directed at what they contend are erroneous findings of fact upon which the order placing the corporations in receivership was based. As we have pointed out, our Supreme Court has already passed on this part of the case. We cannot now overrule the Supreme Court.

[9] The appellants also contend the evidence adduced at the hearing to vacate the order shows the corporations have been so mismanaged since they were placed in receivership that they have greatly deteriorated in value. The appellants argue that for this reason, Judge Seay should have dissolved the order placing the corporations in receivership and returned the control of the corporations to the stockholders. There was conflicting evidence on this point. There was some evidence that the liquid assets of the corporations were depleted during the bankruptcy proceedings. The corporations have ceased some of their business operations pursuant to court order during the receivership. We cannot hold that the evidence shows that the corporations have been so damaged by the receivership that Judge Seay abused his discretion in refusing to dissolve the receivership.

[10] The appellants argue that it was error for Judge Seay not to find facts in this order since he had been requested to do so pursuant to G.S. 1A-1, Rule 52(a)(2). This was an interlocutory

order and is not appealable. For that reason, no findings of fact were necessary. *See O'Neill v. Bank*, 40 N.C. App. 227, 252 S.E. 2d 231 (1979). Even if the order was not interlocutory, we do not believe the appellants were prejudiced by Judge Seay's failure to find facts. The purpose of requiring a trial judge to find facts is to enable an appellate court to determine whether the trial judge based his legal conclusions on the proper facts. In the motion which we now review, the appellants had asked the court to vacate an order which had been entered. The question before Judge Seay was whether the evidence presented was such that he should change the facts found in his previous order or find new facts which would require him to change the order which had been entered. Judge Seay in effect held that the evidence was not such as to require him to change his previous findings of fact or to find new facts which would change the order. We are able to review the evidence and determine whether Judge Seay was correct in this ruling. For that reason, the appellants were not prejudiced by Judge Seay's failure to find facts.

The appellants' fourth assignment of error is overruled.

[11] The appellants' fifth assignment of error deals with the awarding of fees to the receivers, and to the attorneys and accountants for the receivers. The court in several orders approved the payment of fees to the receivers, and to Moore and Van Allen; Brown, Brown and Brown; and Arent, Fox, Kintner, Plotkin and Kahn as attorneys for the receivers. It also approved the payment of fees to Coopers and Lybrand as accountants for the receivers. We have held that it was error to appoint Moore and Van Allen as attorneys for the receivers so we reverse those portions of the orders which authorized the payment of fees to them. We note that if the plaintiffs are successful, they may be entitled to reasonable attorney fees pursuant to G.S. 55-55(d).

In support of the petition for fees, the receivers' attorneys and accountants submitted statements detailing the work they had done. The accountants' statements showed they had devoted 2,286.68 hours to the case. The court authorized the payment of fees and expenses to them in the amount of $90,421.45. R. L. Brown, III submitted a statement showing he had spent 297.75 hours on the case. The court authorized the payment to him of fees and expenses in the amount of $20,698.97. Arent, Fox, Kint-

ner, Plotkin and Kahn filed statements showing they had devoted 414.9 hours to the case. Fees and reimbursement for expenses were authorized for them in the amount of $49,048.22. John M. Bahner, Jr., one of the receivers, filed a statement in which he listed the various things he had done in the course of the receivership. This statement showed he had devoted 413 hours to his duties as a receiver. The receivers were authorized to pay Mr. Bahner $20,931.00 compensation for his work as a receiver. Henry C. Doby, Jr., one of the receivers, submitted a statement in which he set forth in detail the work he did as a receiver. He did not show the number of hours he devoted to this work but it is obvious from his statement that he spent a great deal of time on it. The receivers were authorized to pay him $9,137.00 in fees and as reimbursement for his expenses.

We believe that in view of the amount of time involved, the complexity of the case, and the results obtained, that the fees allowed by Judge Seay are reasonable.

The appellants argue that there was no evidence as to the necessity or value to each corporation of the services rendered, that the statements show the attorneys and accountants worked on the case for a few days before they were appointed, and that some of the work was done while the corporations were in bankruptcy and the receivers had no authority to act. We believe it is obvious that the services of the attorneys and accountants were necessary to settle the tax cases. Judge Seay was well able to determine the value of the services. We believe the work done before the receivers were formally appointed was proper. The corporations were involved in complicated tax litigation. The case was in recess at the time the receivers were appointed and the attorneys and accountants acted properly in starting work on the case a few days before they were authorized by court order to do so. The fees allowed for the time the corporations were in bankruptcy were also proper. It is true that at the time the bankruptcy order was entered, the receivers were divested of authority to act. They were responsible for delivering control of the corporations to the bankruptcy trustee. This required some work. When the tax claims were settled, the receivership received the benefit of all work done by the attorneys and accountants on the tax problems of the corporations while they were in bankruptcy.

The appellants next argue that the corporations were deprived of their property without due process of law when Judge Seay failed to determine the benefit to each corporation from the services of the receivers, attorneys and accountants and to apportion the costs accordingly. They contend that by Judge Seay's not doing so, some of the corporations had to pay for services they did not receive. Judge Seay held in his order appointing the receivers that all the corporations would be treated as one entity. We do not believe he was required to apportion the fees at the time he ordered them paid. When a final judgment is entered in this case, it can be determined what assets are owned by each corporation. At that time it can be determined what proportion of the total costs each corporation must bear.

[12] Finally, the appellants argue that it was improper to allow the fees without giving appellants a chance to cross-examine the receivers, attorneys and accountants as to the services rendered. We hold that the court under G.S. 1A-1, Rule 43(e) could hear the motions for fees on affidavits. *See Morgan, Attorney General v. Dare To Be Great*, 15 N.C. App. 275, 189 S.E. 2d 802 (1972). The appellants did not have the right to cross-examine the applicants for fees.

As to the fifth assignment of error, we reverse in part and affirm in part.

[13] In their sixth assignment of error the appellants argue that Judge Seay committed error in approving the receivers' request to settle tax claims against the corporations. At the time the receivers were appointed, some of the corporations had proposed assessments against them from the Internal Revenue Service. The North Carolina Department of Revenue also had claims against the corporations. A trial on the claims by the Internal Revenue Service had been commenced but was continued when the receivers were appointed. The tax counsel for the receivers negotiated settlements of the tax claims and the receivers petitioned Judge Seay for approval of these settlements.

The evidence at the hearing on this motion was that the Internal Revenue Service had asserted tax deficiencies and penalties against some of the corporations over a period of years from 1950 through 1972 totaling $5,015,519.00. The tax counsel recommended to the court that it approve a settlement of all

claims of the Internal Revenue Service for $540,080.34 and of the North Carolina Department of Revenue for $49,933.05. The court made findings of fact, including a finding of fact that "the negotiated settlement is fair and reasonable and probably represents the best result that can be obtained on behalf of the companies." The court ordered the receivers to execute the proposed settlement of the tax claims.

The appellants contend we should reverse this ruling of the Superior Court. They argue that there are valid defenses to the tax claims which the receiver proposes to settle. They go into some detail as to the validity of these defenses which they contend have not been presented. The appellees concede there may be some defenses to the claims which the receivers propose to pay. However, they say that in light of the fact that there were some fourteen docketed tax cases against the corporations, totaling more than $5,000,000.00 in interest and penalties, it is a good settlement to dispose of all of those cases and settle all claims for less than 11% of what the Internal Revenue Service has claimed. They argue that there are other claims which the Internal Revenue Service is conceding under the proposed settlement which they would not concede were there not a settlement, and which could cost the corporations substantially more than they will pay if the settlement is approved. There was a lengthy hearing on the proposed settlement. The receivers put on substantial evidence as to the complexities of the case and the possibility of having to pay a substantial amount more if the tax claims were not settled. The tax attorneys and the accountants recommended that the tax claims be settled as proposed.

The parties have not cited any North Carolina cases and we have found none which deal with the standard by which we review the trial court in approving settlements of litigation by receivers. The appellees cite *In re Ortiz's Estate*, 27 A. 2d 368 (Del. 1942) which says that the trial court "is only called upon to consider the nature of the claims and the nature of the possible defenses and the situation of the parties and exercise what may be called business judgment in determining whether the proposed compromise is reasonable in the circumstances." *Id.* at 374. We do not believe we can try the tax case in this Court. We believe it was reasonable for Judge Seay to approve the settlement of the tax claims taking into account the possibility of success in defend-

ing them as the evidence before him showed it to be. We hold this approval of the settlements was within Judge Seay's discretion.

The appellants' sixth assignment of error is overruled.

[14]   The appellants by their seventh assignment of error contend Judge Seay should not have entered an order in regard to the sale of certain real estate owned by All Star Foods, Inc. in Hyde County. On 24 March 1981 the attorneys for the plaintiffs and the receivers petitioned the court to sell approximately 15,000 acres of land owned by All Star Foods, Inc. in Hyde County. They alleged that since the corporations had been in bankruptcy, there had been a shortage of working capital and that funds would be needed to pay the tax claims and fees which might be allowed. They alleged further that the Hyde County property is a non-income producing asset.

After hearing testimony, Judge Seay found facts and concluded it would be in the best interest of the corporations and a good prudent business decision to sell the Hyde County property. He ordered that permission to sell the land be given. He also ordered the receivers to investigate as to the value of the land and the tax consequences of a sale. He ordered that any sale of the property would be subject to the approval of the court.

We believe it would be premature for us to pass on this interlocutory order. A superior court judge has the power, pursuant to G.S. 1-505, to order the sale of real property held by a receiver. Until there is an order in this case confirming or not confirming the sale, we do not feel we should pass on its propriety. For this reason, we do not rule on the appellants' seventh assignment of error.

In the eighth assignment of error the appellants contend the court erred in not granting the defendants' motion for partial summary judgment. In the complaint the plaintiffs alleged that W. Horace Lowder had issued to himself stock in All Star Mills, Inc. and Lowder Farms, Inc. without adequate consideration and in violation of the plaintiffs' preemptive rights. The defendants in their pleadings asked that the sale of this stock be rescinded and the consideration paid by W. Horace Lowder for the stock be returned to him. At a hearing on a motion for partial summary judgment as to this pleading by the defendants, W. Horace

Lowder testified as to what he had paid for the stock. Judge Seay ruled that the sale be rescinded but deferred until after the trial a ruling on the question of what should be paid to W. Horace Lowder for the stock.

An appeal from Judge Seay's order on this motion for partial summary judgment is premature. We cannot say whether W. Horace Lowder was damaged by the order until a superior court judge has ruled as to what amount of money Mr. Lowder is entitled to receive. We do not pass on the appellants' eighth assignment of error.

[15]  In their ninth assignment of error the appellants contend Judge Seay committed error in a ruling on a motion they had made that he recuse himself. On 29 May 1981 the appellants filed a motion in which they asked Judge Seay either to (1) vacate his order of 26 June 1979 retaining jurisdiction after he had rotated out of the district; (2) recuse himself from further proceedings in the action; or (3) refer the matter to another judge for a ruling on the motion to recuse.

The appellants alleged in their motion that Judge Seay had given the appearance of having prejudged the action and had exhibited extreme bias toward them. They listed eight specific instances of his bias. These were (1) permitting a layman, W. Horace Lowder, to represent the corporations at the hearing on the appointment of the receivers; (2) appointing the same receivers for the seven corporations although their interests were different; (3) holding a hearing without notice to the defendants at which the plaintiffs' attorneys were appointed as attorneys for the receivers; (4) on information and belief by the appellants undertaking to contact the bankruptcy judge in an effort to get him to "pursue a course of action" while the corporations were in bankruptcy; (5) expressing from the bench his bias against the corporate defendants for seeking the remedies afforded to them under the bankruptcy laws and the United States Constitution; (6) retaining jurisdiction after he had rotated out of the district under an act of the legislature allowing him to do so, which act had been introduced in the legislature at the instigation of R. L. Brown, III without the knowledge of Judge Seay; (7) making an erroneous ruling during the hearing so that the appellants had difficulty acquiring knowledge as to the terms of a contingent fee

contract between Brown, Brown and Brown and Moore and Van Allen; and (8) obtaining documents, orders and information other than in a judicial proceeding.

The motion was filed on the last day of a three-week hearing on 19 motions which had been filed in the case. Judge Seay made rulings and entered orders on these 19 motions. After doing so, he entered an order that the motion for recusal be referred to Judge F. Fetzer Mills for disposition.

The appellants, relying on *Ponder v. Davis*, 233 N.C. 699, 65 S.E. 2d 356 (1951); *State v. Hill*, 45 N.C. App. 136, 263 S.E. 2d 14, *cert. denied*, 300 N.C. 377, 267 S.E. 2d 680 (1980); and *McClendon v. Clinard*, 38 N.C. App. 353, 247 S.E. 2d 783 (1978), argue that it was error for Judge Seay to rule on the other motions before he had either ruled on the motion for recusal or had referred the matter to some other judge who had ruled on it. We believe this case is distinguishable from the cases relied on by the appellants. In none of those cases did the party making a motion for recusal wait until the presiding judge had virtually concluded the hearings. In this case, Judge Seay had conducted hearings for three weeks on 19 motions. We believe he acted properly in ruling on the motions before referring the matter to some other judge for a hearing on the motion for recusal.

The appellants argue that there was a timely filing of this motion because it had only recently been revealed to them that Judge Seay had held an *ex parte* hearing without notice to the defendants at which time the attorneys for the receivers were appointed. We have held in this opinion that the appellants suffered no prejudicial error from that hearing. If that had been the only matter alleged in the motion to recuse, we believe Judge Seay could have summarily denied the motion. We believe Judge Seay acted properly in ruling on the 19 motions before sending the motion for recusal to another judge for a hearing.

The appellants' ninth assignment of error is overruled.

Affirmed in part; reversed in part.

Judges HEDRICK and BECTON concur.