IN RE: PROCEEDINGS FOR THE CONDEMNATION OF A FEE SIMPLE IN-
TEREST IN LAND OWNED BY: R. D. LEE, RACHEL LEE, W. R. SOR-
RELL, CHARLES B. LEE, MARGARET G. LEE, WILLIAM D. LEE, ANN
McLEOD LEE, JOHNNIE G. LEE, SHERRY W. LEE, HAZEL F. YOUNG,
ISABELLA McKAY YOUNG, BECKER SAND AND GRAVEL COMPANY,
INC., DUNN PRODUCTION CREDIT ASSOCIATION, EDGAR R. BAIN,
TRUSTEE, AND MRS. CAROL P. PARKER, EXECUTRIX OF THE ESTATE OF E. A.
PARKER

No. 8611SC461

(Filed 21 April 1987)

1. Eminent Domain § 16— condemnation—rights to sand and gravel—compensa-
ble interest

Petitioner sand and gravel company had a compensable interest in land
which had been condemned for an airport where a document executed in 1967
by petitioner and the landowner gave petitioner the exclusive right to enter
onto the land, mine the land, and to sell the sand and gravel thereon; the dura-
tion of the right was for a term of 30 years, renewable for an additional 20
years; and the document was designated a lease by the parties and was re-
corded in the register of deeds. The interest held by petitioner is compensable
under our eminent domain statutes, which define property broadly enough to
include profits a prendre. N.C.G.S. § 40A-2(7).

2. Eminent Domain § 13— condemnation—value of unexercised sand and gravel
rights

In an action in which petitioner sand and gravel company had a property
interest in land condemned for an airport and a jury had already determined
the fair market value of the entire acreage taken, the proper measure of peti-
tioner's damages was the fair market value of the sand and gravel in place.
Petitioner failed to show by credible and convincing evidence the value of its
interest where petitioner attempted to prove the value of its mineral rights by
"unit times price" valuation evidence; however, petitioner had and proved a
compensable interest and was entitled to nominal damages.

3. Attorneys at Law § 3— condemnation proceeding—attorney formerly repre-
senting all landowners—not disqualified

In an action to determine the value of respondent's interest in condemned
land in which respondent's attorney had been retained by all parties with an
interest in the land at the original condemnation hearing, the trial court did
not abuse its discretion by denying petitioner's motion to require respondent's

In re Condemnation of Lee

attorney to withdraw or to prohibit the use of certain evidence allegedly secured by the attorney while acting as attorney for all property owners.

APPEAL by respondents from *Hobgood, Judge.* Judgment entered 26 September 1985 in Superior Court, HARNETT County. Heard in the Court of Appeals 14 October 1986.

Respondents-appellants R. D. Lee and his wife were the owners in fee simple of a 705-acre tract of land in Harnett County. On 23 March 1967, the Lees entered into a written agreement with petitioner-appellee Becker Sand and Gravel Company which granted petitioner the right to mine the tract for sand and gravel, remove the sand and gravel, process and sell it. The terms of this agreement were that Becker would pay the Lees royalties for the sand and gravel removed, at the rate of ten cents per ton of gravel and five cents per ton of sand. The agreement did not require Becker to begin excavation immediately, but rather allowed the Lees to remain in possession and farm the land until such time as Becker gave notice of its intention to begin operations. Upon receipt of such notice, which had to be given on or before September 15 of any calendar year, the Lees had until the end of the year to remove whatever they wished from the land, such as crops, fences, structures and timber. Becker would have exclusive possession of the land on January 1 following the giving of the notice.

Although Becker did some testing to determine the quantities and locations of the sand and gravel, the notice required by the agreement was never given and the Lees continued to farm the land and actually conveyed a one-half interest in the land to respondent W. R. Sorrell. R. D. Lee has since died, and his widow and children now jointly own his one-half interest.

In 1979, Harnett County instituted proceedings to condemn 34.65 acres of the 705-acre tract for construction of an airport. The county estimated damages at $76,535 but the majority of the appraisers appointed pursuant to statute reported damages at $261,596. The county appealed to the Superior Court and a jury fixed just compensation at $94,600. That judgment was affirmed by this Court in *In re Lee*, 69 N.C. App. 277, 317 S.E. 2d 75 (1984).

The petitioner in this action, Becker Sand and Gravel, then filed a motion in the cause, pursuant to G.S. 40A-55, seeking to

have a jury determine its share of the compensation award based on the 1967 agreement. The respondents are W. R. Sorrell and the heirs of R. D. Lee. A jury trial was held and, over the objections of respondents, experts testified as to their estimates of the amount of sand and gravel recoverable from the condemned tract and its value. Respondents' motion for directed verdict was denied and the jury determined that Becker was entitled to $25,000 of the $94,600 award. Respondents' motions for judgment notwithstanding the verdict and for a new trial were denied. Respondents appeal.

*Bain and Marshall by Edgar R. Bain and Phillip A. Fusco for petitioner-appellee.*

*Johnson and Johnson, P.A., by W. A. Johnson for respondents-appellants.*

PARKER, Judge.

Respondents assign as error the denial of their motion for a directed verdict and the denial of their post-trial motions for judgment n.o.v. and a new trial. Respondents also contend that the trial court erred in admitting certain expert testimony for the petitioner and in failing to instruct the jury on the proper measure of damages to be applied.

[1]   Respondents first argue that petitioner had no compensable interest in the condemned property. We disagree. The document executed by the Lees and petitioner in 1967 gave Becker the exclusive right to enter onto the land and to mine the land, and to remove and sell the sand and gravel thereon. The duration of this right was for a term of thirty years, renewable for an additional twenty years. The document was designated a "lease" by the parties and was recorded in the Harnett County register of deeds.

The right to enter another's land and take away minerals, or other things of value such as timber or game, is a profit a prendre. *Council v. Sanderlin,* 183 N.C. 254, 111 S.E. 365 (1922). Although there is no right to sell the sand and gravel in place and the substance must be severed from the ground before title passes, *see* 1 Thompson on Real Property § 136 (repl. ed. 1964), such an interest is an estate in the land. *Council, supra.* Thus, the interest held by petitioner in the land owned by respondents is

compensable under our eminent domain statutes, which define "property" as "any right, title, or interest in land . . . and any other privilege or appurtenance in or to the possession, use, and enjoyment of land." G.S. 40A-2(7). This definition is broad enough to include profits a prendre, requiring just compensation to the owner of that interest when the right to enter upon lands is lost through condemnation. *See generally* 2 Nichols on Eminent Domain § 5.14(7) (3d ed. 1985).

However, determining that petitioner is an "owner" of condemned "property," as those terms are defined in the statute, is just the first step toward resolving this controversy. More difficult questions arise in determining the proper measure by which to value petitioner's interest and the proper evidence to prove the damages.

[2]   General Statute 40A-64 mandates that the proper measure of just compensation for a taking shall be the fair market value of the property taken. The general rule in valuing the minerals on a tract of land being taken for public use is that the presence of mineable minerals on the land should be taken into consideration when appraising the fair market value of the land, but the minerals should not be valued separately then added onto the fair market value of the land as currently used. *Highway Commission v. Mode*, 2 N.C. App. 464, 163 S.E. 2d 429 (1968). An exception to this rule is recognized where the minerals alone are taken or the rights to the minerals are held by someone other than the holder of the fee. *See 4 Nichols*, § 13.22(1). Here, however, the first jury has already determined the fair market value of the entire acreage taken to be $94,600. Presumably, that jury considered the value, or lack thereof, of the sand and gravel in determining the highest and best use of the land for valuation purposes.

Petitioner's interest in the property was the right to enter and remove the sand and gravel and sell the same. The consideration for the agreement under which petitioner claims an interest in the property was the royalty to be paid to the fee owners when the sand and gravel were removed and sold. Otherwise, the fee owner received no compensation. The question then is what is the proper measure of compensation to one who loses through eminent domain the right to remove the sand and gravel from the property of another when that right has never been exercised and the sand and gravel remain in the ground untouched.

Construing similar agreements, courts in some jurisdictions have concluded that the contract created a profit a prendre and that the fair market value of the interest entitling the holder to compensation was the value of the sand and gravel in place as it lay undisturbed. *See City of Phoenix v. South Bank Corp.*, 133 Ariz. 90, 649 P. 2d 293 (1982); *Bates Sand & Gravel Co., Inc. v. Commonwealth*, 380 Mass. 933, 404 N.E. 2d 81 (1980). In contrast, in *U.S. v. 1,070 Acres of Land*, 52 F. Supp. 378 (M.D. Ga. 1943), applying Georgia law, the United States District Court recognized the claimant's interest in the sand, but analyzed the agreement as an executory contract and concluded that when the government took the land, performance by the fee holder was excused; therefore, claimant had nothing to be paid for in the condemnation proceeding.

The approach taken by the Arizona and Massachusetts courts is consistent with prior North Carolina cases. *See Light Co. v. Horton*, 249 N.C. 300, 106 S.E. 2d 461 (1959); *Council v. Sanderlin, supra; Highway Commission v. Mode, supra.* In our opinion, the proper measure of damages is the fair market value of the sand and gravel in place. In place, unexcavated, the sand and gravel have only a potential value. While the holder of the profit a prendre has an interest in the sand and gravel, ownership of the sand and gravel does not pass until the sand and gravel have been removed. The value of the sand and gravel in place would, therefore, be what a willing buyer would pay a willing seller, neither being under compulsion, in an arm's length transaction for the contract right to quarry the sand and gravel immediately before the condemnation. Factors bearing on this determination would be (i) potential tonnage, (ii) cost of extracting the sand and gravel, (iii) amount of royalty to be paid under the agreement, (iv) cost of transporting and processing the sand and gravel and (v) an available market for sale of the sand and gravel.

In the instant case, petitioner's evidence to support its claim to the condemnation proceeds was in no way correlated to the $94,600 awarded by the first jury. For example, appellee's first witness was its vice president in charge of finance. This witness testified to the amount of sand and gravel on the condemned tract using the test hole data from the original testing of the site in 1967. Based on this data, which included at least two test holes on the condemned portion, the first witness concluded that there

were 323,157 tons of recoverable gravel and 627,906 tons of mineable sand on the condemned tract and an area of approximately four acres surrounding the tract which, as a result of the airport construction, could not be mined. Multiplying these numbers by a price of ten cents per ton for sand and twenty-five cents per ton for gravel, the witness arrived at a value of the condemned tract of $143,573. From this, the witness subtracted $63,708 in royalties payable to the respondents and concluded that the condemned tract was worth $79,865 to petitioner. The witness did not, however, suggest a source for the additional $48,973 needed to make the parties whole under this theory. Another witness for petitioner, certified by the court as an expert in geology, essentially corroborated the earlier witness' testimony with figures varying only slightly. This witness had used data from test holes made in 1981, after the taking. None of these holes were on the condemned land, however.

Petitioner attempted to prove the value of the mineral rights it held by estimating the amount of mineable sand and gravel on the property condemned and multiplying those figures by a set price per unit. However, this "unit times price" method of valuing minerals in place has been soundly rejected by the courts of other jurisdictions and the federal courts with surprising uniformity. *See, e.g., United States v. 339.77 Acres of Land*, 420 F. 2d 324 (8th Cir. 1970); *Georgia Kaolin Co. v. United States*, 214 F. 2d 284 (5th Cir. 1954), *cert. denied*, 348 U.S. 914, 75 S.Ct. 294, 99 L.Ed. 716 (1955); *H. E. Fletcher Co. v. Commonwealth*, 350 Mass. 316, 214 N.E. 2d 721 (1966). *See generally* Annot., 40 A.L.R. Fed. 656 (1978). This rule has been held to be especially applicable to cases, such as the one at bar, where mining operations have not even begun. *See, e.g., Ringwood Co. v. North Jersey District Water Supply Commission*, 105 N.J.L. 165, 143 A. 369 (1928). The rationale underlying this rule is that such evidence is simply too speculative, as it is based upon unknown and uncertain elements which enter into the operation of mining, processing and marketing the minerals. In *United States ex rel. TVA v. Indian Creek Marble Co.*, 40 F. Supp. 811 (E.D. Tenn. 1941), the court addressed the problem in the following language:

> Fixing just compensation for land taken by multiplying the number of cubic feet or yards or tons by a given price per unit has met with almost uniform disapproval of the

courts. This is true because such valuation involves all of the unknown and uncertain elements which enter into the operation of the business of producing and marketing the product. It assumes not only the existence, but the continued existence of a stable demand at a stable price. It assumes a stable production cost and eliminates the risks all businessmen know attend the steps essential to the conduct of a manufacturing enterprise. . . . No man of business experience would buy property on that theory of value. True it is that quality and quantity have a place in the mind of the buyer and the seller, but the product of these multiplied by a price per unit should be rejected as indicating market value when the willing seller meets the willing buyer, assuming both to be intelligent. Values fixed by witnesses on such a basis are practically worthless, and should not be accepted. To the extent the valuation fixed by any witness contains this speculative element, to the same extent is its value as evidence reduced.

*Id.* at 822.

The trial court did not err in admitting this "unit times price" valuation evidence, as the rule on expert testimony allows testimony based upon data learned from reliable scientific technique and absolute certainty is not required. *See State v. Catoe,* 78 N.C. App. 167, 336 S.E. 2d 691 (1985), *disc. rev. denied,* 316 N.C. 380, 344 S.E. 2d 1 (1986). The testimony substantiated that the test hole data used by petitioner's experts was relied upon in the field of sand and gravel mining. We do hold, however, that standing alone this evidence was insufficient to support any award for petitioner. The evidence was too speculative and petitioner's case lacked several critical elements necessary to allow a jury to make a reasoned decision as to the value of petitioner's interest in the condemned land. There was no evidence presented on the cost of extraction of the minerals. No evidence was offered tending to show the costs of processing or transporting the minerals. The testimony of one witness was that it would have been necessary for petitioner to build a processing plant on the site, but no evidence was presented as to the cost or even the feasibility of such a project. Finally, petitioner failed to show that there was even a market for the sand and gravel in 1979. *See United States v. 121.20 Acres of Land,* 333 F. Supp. 21 (E.D.N.C.

1971). In fact, the evidence was to the contrary. The long period of nonuse permits the inference that no market existed. Petitioner had not begun operations on the remaining land at the time of the condemnation and, in the first trial, a former vice president of the company had testified that mining the condemned land had not been economically feasible up until that date. *See In re Lee*, 69 N.C. App. at 285, 317 S.E. 2d at 80.

We conclude that petitioner failed to show by credible and convincing evidence the value of its interest in the condemned land. However, since petitioner does have and proved a compensable interest but failed to prove its value, the petitioner is entitled to nominal damages. *Light Co. v. Horton, supra.* Therefore, the verdict and award in favor of petitioner should be vacated and the case remanded to the trial court for entry of an award of nominal damages. The foregoing discussion and holding resolve respondents' assignments of error related to expert testimony, directed verdict and new trial and obviate the need to further consider error in the jury instructions.

Petitioner cross-assigns as error the failure of the trial court to find as a matter of law that respondents were estopped to assert that petitioner had no interest in the condemned land. The basis for this argument was that respondents had argued in the first trial that the presence of the mineral rights increased the value of the land. However, we need not address this question as any error would be harmless in light of our earlier conclusion that petitioner did, in fact, have a compensable interest in the land.

[3] Petitioner also cross-assigns as error the denial of its pretrial motion to require Attorney W. A. Johnson to withdraw as counsel for respondents-appellants and its alternative motion for a protective order prohibiting the use of certain evidence allegedly secured by W. A. Johnson while acting as attorney for petitioner. Attorney Johnson was retained by all parties with an interest in the condemned land at the original condemnation proceeding. Those parties included both petitioner and respondent in this case. Attorney Johnson was then retained by respondents-appellants to represent them in petitioner-appellee's action to recover a share of the condemnation award.

Dull v. Mut. of Omaha Ins. Co.

The Code of Professional Responsibility was in effect at the time of this motion. Canon 5 of the Code required attorneys to "exercise independent professional judgment on behalf of a client." At the time of the motion, Attorney Johnson no longer represented petitioner; therefore, the only concern was that confidences Johnson learned while representing petitioner might be used against it in the second case. However, petitioner failed to convince the trial judge who heard the motions, Superior Court Judge D. B. Herring, that there was the possibility of any prejudice. Such a ruling is discretionary with the trial judge and is not generally reviewable on appeal. *Lowder v. All Star Mills, Inc.*, 60 N.C. App. 275, 300 S.E. 2d 230, *rev'd in part on other grounds*, 309 N.C. 695, 309 S.E. 2d 193 (1983). Judge Herring's ruling was supported by the evidence and was not an abuse of discretion.

Because petitioner failed to meet its burden of proving the damages it sustained as the result of the condemnation, the award must be vacated. However, because petitioner did prove it had an interest in the condemned land, the case is remanded to the Superior Court of Harnett County for entry of an award of nominal damages.

Vacated and remanded.

Judges PHILLIPS and COZORT concur.