## CIRCUIT COURT OF RICHMOND COUNTY

H. Shirley Powell et al.

v.

Warsaw Equipment, Inc., et al.

November 20, 1991

Case No. (Chancery) 35-01CH

By JUDGE JOSEPH E. SPRUILL, JR.

We address here Motions to Disqualify the law firms representing the plaintiffs in this proceeding.

The plaintiffs are a group of twenty-five farmers who seek various forms of relief against four corporate and three individual defendants. Among their many allegations are their claims that they individually contracted with defendants and in some manner paid for farm equipment which they do not currently possess. They seek delivery of such equipment to the individual farmers pursuant to their respective contracts. Because the assets of one of the defendants, Warsaw Equipment, Inc., may be limited, the possibility exists that there will not be assets available to satisfy all claims of the plaintiffs. They also allege that some of the same equipment has been sold by Warsaw Equipment, Inc., to more than one of the plaintiffs.

The three individual defendants are alleged to be "insiders and shareholders" of Warsaw Equipment.

The remaining corporate defendants are Deutz-Allis Corporation, a manufacturer and distributor of farm machinery, for which Warsaw Equipment is alleged to be an authorized dealer, and Deutz-Allis Credit Corporation and Whirlpool Financial Corporation, both of which finance farm

equipment dealers and/or customers of dealers. It is counsel for these three corporate defendants who have moved to disqualify plaintiffs' counsel, citing the conflicts among plaintiffs in their competing claims for the same equipment.

Counsel have submitted memoranda, and oral argument was heard on November 5th.

Counsel for plaintiffs concede that their clients will be making competing claims for the same equipment in some instances. For example, eight plaintiffs appear to be making a claim for a six-row corn header, and apparently only one is available from the Warsaw Equipment inventory. An order in detinue requiring delivery of the equipment to the plaintiffs is one of the forms of relief requested in the sixteen count Bill of Complaint.

Thus, the issue is framed: does the fact that some among twenty-five plaintiffs are claiming entitlement to the same or similar equipment require disqualification of their counsel, given that the assets of Warsaw Equipment are likely to be insufficient to satisfy all claims.

The overriding concern is resolving issues of this nature is neither the convenience of the parties or counsel nor is it judicial economy or expediency. It is to insure strict compliance with the letter and spirit of the Code of Professional Responsibility. In this effort, there can be no compromise.

The resolution of the issue is governed by D.R. 5-105 of the Code of Professional Responsibility, which proscribes acceptance or the continuation of employment by multiple clients by a lawyer if his independent professional judgment is, or is likely to be, adversely affected unless it is obvious that he can adequately represent the interests of each client *and* each client consents after full disclosure of the possible effect of the lawyer's multiple representation on his independent judgment.

The plaintiffs here organized themselves after becoming aware of the imminent financial collapse of Warsaw Equipment. After a series of meetings, they apparently elected to consolidate their efforts and resources and engaged counsel. Their counsel has represented to the court that the ethical problems were thoroughly considered by counsel and subsequently reviewed by counsel with each of their potential clients. Plaintiffs' counsel confirmed that full disclosure was made, that their independent professional

judgment will not be adversely effected, and that their clients, the plaintiffs, have given their informed consent. Written statements acknowledging the possible conflicts and consenting to the representation have been filed with the Court, under seal.

These Motions to Disqualify come after at least two hearings involving the equipment in dispute, at which most, if not all, of the plaintiffs were in attendance. There is no real question here but that the plaintiffs are fully aware of the conflicting claims among them to the various items of equipment and that they nonetheless knowingly have consented to the representation in question. Thus, I find that the disclosure and consent requirements of D.R. 5-105 are satisfied.

The remaining requirement, the possible effect multiple representation may have on the lawyers' independent professional judgment, involves a more subjective examination. This requires an analysis of the respective interests of the joint parties and a determination of whether multiple representation might undermine the fairness of the judicial process. *Coleman v. Smith*, 814 F.2d 1142 (7th Cir. 1987). Further, we must find a proper balance between the need to ensure ethical conduct on the part of lawyers appearing before the Court and the right of litigants to have counsel of their choice and to have their cases expeditiously disposed of. *Stoddard v. Board of Tax Assessors*, 326 S.E.2d 827 (1985); *Lowder v. All Star Mills, Inc.*, 300 S.E.2d 230 (1983).

Courts are not required to weigh these circumstances with hair-splitting nicety. *United States v. Clarkson*, 567 F.2d 270 (4th Cir. 1977).

We cannot know, at this stage, how this litigation will develop. Therefore, the lawyers' own assessments of the propriety of their representation is entitled to some weight. The recovery of the equipment is only a part of the relief sought. We recognize that the farmers, individually, may be unable to afford to carry on this litigation. It is therefore possible, if not probable, that only by uniting in a common cause will these plaintiffs have access to the courts. This is not to say that any aspect of the Code of Professional Responsibility should be subordinated in the name of expediency or any other reason; it is simply to acknowledge that making legal

counsel available and insuring to our citizens their access to the judicial system are also essential parts of our ethical culture.

In *Aetna Casualty & Surety Company v. United States*, 570 F.2d 1197 (4th Cir. 1978), there is a comment, quoted with approval in subsequent cases, the reasoning of which I find compelling:

> It behooves this court, therefore, while mindful of existing Code, to examine afresh the problems sought to be met by that Code, to weigh for itself what those problems are, how real in the practical world they are in fact, and whether a mechanical and didactic application of the Code to all situations automatically might not be productive of more harm than good, by requiring the client and the judicial system to sacrifice more than the value of the presumed benefits.

The circumstances here, in my view, do not warrant a finding that the professional judgment of counsel for the plaintiff will be adversely affected by the multiple representation of the plaintiffs. Accordingly, the Motion to Disqualify is denied.

A cautionary note is in order. I am wary over the prospect that the testimony of plaintiffs may be conflicting, a concern raised at the November 5th hearing. The task of plaintiffs' counsel is inherently difficult. If the Court is left to sort through confusing fact issues without the benefit of true advocacy, the Court's decision today denying the Motion to Disqualify will prove to have been unwise and in error.

Finally, plaintiffs' counsel requests an assessment against defendants for its attorney's fees and costs incurred in defending this motion. This request is denied. The defendants appear to have acted in complete good faith in raising this sensitive ethical issue. In view of the complexities of this case, they had the right, and perhaps even the duty, to bring this issue before the Court, and they should not be penalized for doing so.